UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GEOMC CO., LTD., | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 3:14-cv-01222 (VAB) |
| | : | |
| CALMARE THERAPEUTICS, | : | |
| INCORPORATED, | : | |
| Defendant. | : | |

## ORDER

Plaintiff, GEOMC Co., Ltd. ("GEOMC"), brought this lawsuit against Defendant, Calmare Therapeutics, Incorporated ("CTI"), alleging misconduct in connection with CTI's purchase of certain medical devices from GEOMC. Second Am. Compl., ECF No. 137. GEOMC now seeks to strike aspects of CTI's Answer to its Second Amended Complaint under Fed. R. Civ. P. 12(f), claiming that CTI improperly changed its responses from those stated in its original Answer and stated new affirmative defenses beyond the scope of permissible amendment. Pl. Mot. to Strike, ECF No. 139. For the reasons outlined below, GEOMC's Motion to Strike is **GRANTED IN PART** and **DENIED IN PART**.

### I.  PROCEDURAL HISTORY

GEOMC filed its initial complaint in August 2014 and then subsequently amended it, with the consent of all parties, in October 2014. Compl., ECF No. 1; Am. Compl., ECF No. 29. GEOMC's Amended Complaint describes five distinct causes of action against CTI: Replevin; Wrongful Detention in violation of Conn. Gen. Stat. § 52-515; Conversion; and violation of the Connecticut Unfair Trade Practices Act ("CUTPA"). *Id*. at ¶¶ 53-86. Each of these claims relates to a series of a specific kind of medical device allegedly purchased from GEOMC by CTI

1

and for which CTI allegedly failed to make full payment. *Id*. CTI filed its Answer to GEOMC's Amended Complaint on December 31, 2014, including with its responses nine affirmative defenses and no counterclaims. Answer to Am. Compl., ECF No. 36.

In September 2015, over eight months after CTI filed its Answer to GEOMC's Amended Complaint, CTI sought leave to amend its Answer. Mot. for Leave to Am. Compl., ECF No. 109. CTI's proposed amendments included several additional affirmative defenses not alleged in its previous Answer, as well a new "third party complaint" asserting several counterclaims against GEOMC. *Id*. GEOMC opposed CTI's motion, arguing that a defendant should not be permitted to change its answers or broadly assert new counterclaims after its initial answers have already been filed. Pl. Mem. in Opp., ECF No. 121. GEOMC simultaneously filed a cross-motion of its own seeking leave to amend its Amended Complaint by adding a sixth claim for breach of contract. Cross Motion to Am., ECF 120.

After extensive briefing regarding whether GEOMC should be permitted to amend its answer, the Court denied CTI's motion for leave to amend, granted leave for GEOMC to file a Second Amended Complaint, and permitted CTI to file an amended Answer in response, subject to GEOMC's ability to file a motion to strike any components of CTI's answer that were impermissible. Order, ECF No. 136. Pl. Mem., ECF No. 121. In its Order, the Court rejected the "narrow approach" espoused by GEOMC, which would have prohibited CTI from filing any new defenses and/or counterclaims in its amended Answer in the absence of leave from the Court. *Id*.

GEOMC filed its Second Amended Complaint on June 15, 2016, adding three sentences to assert a sixth cause of action for breach of contract. Second Am. Compl., ¶¶ 87-79. CTI filed its amended Answer on June 30, 2016. Answer to Second Am. Compl., ECF No. 138. In its

2

amended Answer, CTI significantly increased its number of affirmative defenses, alleging the following additional defenses: GEOMC is liable for any medical devices that were defective ("Fourth Affirmative Defense"); GEOMC's damages were caused by their own negligence and misconduct as well as the negligence of third parties ("Sixth Affirmative Defense"); GEOMC has failed to join a necessary party ("Seventh Affirmative Defense"); any damages owed by CTI are offset by the amounts owed to CTI by GEOMC ("Eighth Affirmative Defense"); GEOMC failed to mitigate its damages ("Ninth Affirmative Defense"); and GEOMC never gave CTI reasonable notice as required by the agreement between the parties ("Tenth Affirmative Defense"). *Id*. at ¶¶ 93-99.

CTI's amended Answer also brings six new counterclaims against GEOMC. *Id*. at ¶¶ 131-159. CTI specifically alleges the following counterclaims: GEOMC breached an exclusive license agreement in which GEOMC agreed to manufacture certain medical devices exclusively for CTI by selling devices to a separate entity named Radiant Health Management Corp. ("Radiant") ("First Counterclaim"); GEOMC tortiously interfered with a separate manufacturing license agreement between CTI and another third party entity, Delta Research & Development S.R.L. ("Delta") ("Second Counterclaim"); GEOMC knew that it was entering into ultra vires agreements with one of CTI's officers, Johnie Johnson; ("Third Counterclaim"); CTI overpaid GEOMC by the amount of $32,000 ("Fourth Counterclaim"); GEOMC engaged in unfair competition and unlawful business acts in violation of the Lanham Act and "state law"; ("Fifth Counterclaim"); and both Radiant and GEOMC's Chief Executive Officer Young H. Lim tortiously interfered with CTI's contractual agreement with GEOMC regarding the manufacture of the medical devices at issue ("Sixth Counterclaim"). *Id*. CTI's amended Answer also reflects

3

changes in CTI's responses whereby various admissions were rewritten into denials. *Id*. at ¶¶ 19, 20, 27, 28, 40, 41, 42.

GEOMC now moves to strike several of CTI's new answers, affirmative defenses and counterclaims under Rule 12(f). Mot. to Strike, ECF No. 139.

## II.     STANDARD OF REVIEW

Rule 12(f) of the Federal Rules of Civil Procedure provides that a court "may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Resolution of a Rule 12(f) motion is within the discretion of the district court, and such motions are generally disfavored and should be infrequently granted. *Tucker v. Am. Int'l Grp., Inc*., 936 F. Supp. 2d 1, 15-16 (D. Conn. 2013). The Second Circuit has long held that courts "should not tamper with the pleadings unless there is a strong reason for so doing," and that a motion to strike under Rule 12(f) should be denied "unless it can be shown that no evidence in support of the allegation would be admissible." *Lipsky v. Commonwealth United Corp*., 551 F.2d 887, 893 (2d Cir. 1976). Thus, the party moving to strike "bears a heavy burden" and ordinarily must show that "(1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the issues in the case; and (3) permitting the allegations to stand would result in prejudice to the movant." *Tucker*, 936 F. Supp. at 16.

With respect to affirmative defenses and counterclaims, in order for a motion to strike to be granted, there must be some showing of prejudice to the moving party. *Walters v. Performant Recovery, Inc*., 124 F. Supp. 3d 75, 80 (D. Conn. 2015) ("Plaintiff does not identify, nor can the Court ascertain, any 'prejudicial harm to plaintiff' arising from the inclusion of this defense, and thus, 'the defense need not be stricken.'") (*citing Cnty. Vanlines Inc. v. Experian Info. Solutions, Inc*., 205 F.R.D. 148, 153 (S.D.N.Y. 2002)); *see also Balk v. New York Inst. of Tech*., No. CV

11-509 (JFB) (AKT), 2013 WL 6990767, at *10 (E.D.N.Y. Sept. 30, 2013) (permitting the assertion of new affirmative defenses, explaining that "the Court is not convinced that Plaintiff would be prejudiced by the assertion of these two affirmative defenses"); *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 425–26 (S.D.N.Y. 2010) ("If a court determines that a defense is legally insufficient, the court must next determine whether inclusion of the defense would prejudice the plaintiff"). "Striking a pleading has been described as a 'drastic remedy' and 'to prevail on a motion to strike, the movant must clearly show that the challenged matter has no bearing on the subject matter of the litigation and that its inclusion will prejudice the movant.'" *Lamoureux v. AnazaoHealth Corp.*, 250 F.R.D. 100, 102 (D. Conn. 2008) (citing *2 Moore's Federal Practice*, §§ 12.37[1], 12.37[3] (3d ed. 2007)).

### III.  DISCUSSION

GEOMC argues that the changes reflected in CTI's amended Answer are impermissibly disproportionate to the changes reflected in GEOMC's Second Amended Complaint.  Pl. Mem. in Supp., ECF No. 139-1.  Specifically, GEOMC argues that CTI should not be permitted to (1) change prior admissions to denials; (2) allege six additional affirmative defenses; and (3) bring five of its six new counterclaims against GEOMC.  *Id*.  With respect to CTI's Sixth and Seventh Affirmative Defenses as well as CTI's First, Second, Fifth and Sixth Counterclaims only, the Court agrees with GEOMC.

When a motion to strike is based on arguments regarding the proper scope of amendments to pleadings, the court is guided by Rule 15, which provides that leave to amend pleadings should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Before the 2009 amendments to the Federal Rules of Civil Procedure, the proper scope of amendments to pleadings was also informed by former Rule 13(f), which required the court's leave in order to

add new allegations to an answer. *See Southern New England Tel. Co. v. Global NAPS, Inc.,* No. 3:04-cv-2075 (JCH), 2007 WL 521162 (D. Conn. Feb. 14, 2007) (holding that, based on the interplay between Rule 13(f) and Rule 15, courts should apply a "narrow approach" requiring that any new counterclaims relate specifically to changes made to the complaint). This rule was abrogated in 2009, leaving only Rule 15 to govern the proper scope of amendments to pleadings. *See Virginia Innovation Scis., Inc. v. Samsung Elecs. Co.*, 11 F. Supp. 3d 622, 629-630 (E.D. Va. 2014) (holding that, based on the abrogation of Rule 13(f) in 2009, the "narrow approach" was no longer appropriate and a "moderate approach" should be applied instead, allowing amendments to the answer as of right if similar in scope to amendments to the complaint).

District courts in this Circuit have taken various different approaches when ruling on motions to strike amendments to pleadings, falling into three main categories: "narrow," "moderate" and "permissive." *See, e.g., MTA Metro-North Railroad v. Buchanan Marine, L.P.*, No. 3:05-CV-881 (PCD), 2006 WL 3544936 at *2 (D. Conn. Dec. 8, 2006); *Purchase Partners, LLC v. Carver Federal Sav. Bank*, No. 09 Civ. 9687 (JMF), 2013 WL 1499417 at *6 (S.D.N.Y. Apr. 10, 2013) (noting that "the case law regarding a party's ability to amend a counterclaim as of right in response to an amended complaint is 'all over the map'"). GEOMC asserts that this Court's June 2016 Order, ECF No. 136, requires the application of the "moderate approach." Pl. Mem. in Supp. at 12; *See, e.g. Virginia Innovation Scis.*, 11 F. Supp. 3d at 630. However, while the Order explicitly rejected the "narrow" approach originally advocated by GEOMC, it never formally adopted the "moderate" approach. Order, ECF No. 136. Instead, the Court indicated that it would evaluate each of the contested provisions of CTI's amended Answer using the general principles governing motions to strike. *Id.*

Under Rule 12(f), a motion to strike generally requires a showing that "(1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." *Tucker*, 936 F. Supp. 2d at 16 (citing *Impulsive Music v. Pomodoro Grill, Inc.*, No. 08-CV-6293, 2008 WL 4998474, at *2 (W.D.N.Y., Nov. 19, 2008)). "Increased time and expense of trial may constitute sufficient prejudice to warrant striking an affirmative defense." *Coach,* 756 F.Supp.2d at 426; *see also Walters*, 124 F.Supp.3d at 79-83 (granting in part and denying in part plaintiff's motion to strike affirmative defenses in defendant's amended answer based on presence or absence of prejudice to plaintiff). For the reasons outlined below, the Court finds that (1) CTI's amended responses to the allegations in GEOMC's Second Amended Complaint are not prejudicial and will be permitted; (2) CTI's Fourth, Eighth, Ninth and Tenth Affirmative Defenses are not prejudicial and will be permitted; (3) CTI's Sixth and Seventh Affirmative Defenses regarding unspecified third parties are irrelevant and prejudicial and will be stricken; and (4) all of the new counterclaims contested by GEOMC are irrelevant and prejudicial and will be stricken.

### a. Responses to Allegations in Second Amended Complaint

Throughout CTI's amended Answer, several of CTI's responses have been changed from prior admissions into denials. *See, e.g.* Answer to Second Am. Compl. ¶ 19 (denying previously admitted allegation that CTI entered into a Supply Agreement with GEOMC); ¶ 20 (claiming insufficient information for previously admitted allegation that the Supply Agreement is governed by Connecticut law); ¶ 27 (denying previously admitted allegations regarding specific amounts stated on CTI's Form 10-Q for the first quarter of 2014); ¶ 28 (denying previously admitted allegations about "cash flow" problems on the part of CTI). GEOMC contends that

CTI should not be allowed to change prior admissions to denials "without a sound factual basis for doing so," and that such changes are impermissible under the "moderate" approach. Pl. Mem. in Supp. at 16.  However, GEOMC does not allege that it would suffer any prejudice as a result of these amendments as required to prevail on a motion to strike under Rule 12(f).

While these changes to CTI's responses may understandably be perceived as unfair, the Court cannot identify any actual prejudice to GEOMC that would result from their inclusion.  In order to prevail on a motion to strike under Rule 12(f), it is not enough to allege that certain contents of an amended pleading should not have been included; rather, the contested portions of the pleading must also be prejudicial to the moving party. *See Saylavee LLC v. Hockler,* 228 F.R.D. 425, 426 (D. Conn. 2005) ("Inappropriately hyperbolic allegations, ill-conceived attempts at levity, and other similar manifestations of bad judgment in drafting pleadings, by themselves, fall short of the threshold that Rule 12(f) contemplates").  Although this case has been pending since 2014, discovery has not been completed.  *See* 1/14/2016 Order, ECF No. 132 (granting stay of discovery through April 15, 2016).  CTI's new denials will not impact GEOMC's ability to present its case throughout the remainder of this litigation, and there is nothing in the filings from which this Court could infer otherwise.

Accordingly, GEOMC's motion to strike is denied with respect to the responses stated in CTI's amended Answer.

### b.  Affirmative Defenses

CTI's Answer to GEOMC's Second Amended Complaint includes six affirmative defenses that were not listed in CTI's Answer to GEOMC's Amended Complaint.  Answer to Second Am. Compl. at ¶¶ 93-99.  GEOMC seeks to strike all six of these new affirmative defenses, arguing that they do not relate to the breach of contract claim recently added to the

Second Amended Complaint and thus should be stricken as impermissibly expanding the scope of the case. Pl. Mem. in Supp. at 16. GEOMC also argues that CTI has already waived its ability to assert each of these affirmative defenses by failing to raise them in its original Answer. *Id*. at 17. With the exception of CTI's Sixth and Seventh Affirmative Defenses, the Court disagrees.

### i. Fourth, Eighth, Ninth and Tenth Affirmative Defenses

When considering a motion to strike affirmative defenses, "the Court should construe 'the pleadings liberally to give the defendant a full opportunity to support its claims at trial, after full discovery has been made.'" *Coach*, 756 F.Supp.2d at 425 (citing *S.E.C. v. McCaskey*, 56 F.Supp.2d 323, 326 (S.D.N.Y. 1999)). Furthermore, motions to strike affirmative defenses will generally be denied absent a showing of legal insufficiency and prejudice. *Id*. at 425-426; *Walters*, 124 F.Supp.3d at 79. GEOMC has demonstrated neither legal insufficiency nor prejudice with respect to CTI's Fourth, Eighth, Ninth and Tenth Affirmative Defenses.

Each of these affirmative defenses relates specifically to the allegations made in GEOMC's Second Amended Complaint regarding the contractual agreement between the parties. CTI's Fourth Affirmative Defense directly concerns the medical devices at issue in this case, alleging that GEOMC is liable if its product was defective. Answer to Second Am. Compl. ¶ 93. CTI's Eighth and Ninth Affirmative Defenses similarly allege that GEOMC owes money to CTI and has failed to mitigate its damages in this matter. *Id*. at ¶¶ 97-98. CTI's Tenth Affirmative Defense speaks directly to the Security Agreement that GEOMC alleges was breached, claiming that GEOMC violated the specific notice provisions of that agreement. *Id*. at ¶ 99. None of these new defenses is "redundant, immaterial, impertinent, or scandalous" under

Rule 12(f), and there is no evidence that any of these defenses would expand the scope of the case a manner that would be prejudicial to GEOMC.

GEOMC's argument that CTI has waived its ability to assert affirmative defenses is unavailing at this early stage of the litigation. While "the general rule in federal courts is that failure to plead an affirmative defense results in a waiver," *Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1580 (2d Cir. 1994), the Second Circuit has recognized an exception where the defense is raised at a "pragmatically possible time" and applying the defense "would not unfairly prejudice the opposing party." *Odyssey Reinsurance Co. v. Cal-Regent Ins. Servs. Corp.*, 123 F. Supp. 3d 343, 356–57 (D. Conn. 2015) (internal citations omitted) (permitting leave to plead a new affirmative defense at summary judgment stage). In the absence of prejudice to GEOMC, CTI is permitted to raise related affirmative defenses in an answer to a newly amended complaint, especially where, as here, the complaint adds a new theory of liability to the case.

GEOMC's motion to strike is denied with respect to these affirmative defenses.

### ii. Sixth and Seventh Affirmative Defenses

CTI's Sixth and Seventh Affirmative Defenses, on the other hand, introduce vague allegations regarding the actions of unnamed third parties, raising concerns of both legal sufficiency and prejudice to GEOMC. It is well-settled that "an affirmative defense must 'give the plaintiff fair notice of the nature of the defense.'" *Walters*, 124 F.Supp.3d at 78 (citing *MTA Metro-North R.R.*, 2006 WL 3544936 at *4. "[C]onclusory assertions, absent any supporting factual allegations are insufficient as a matter of law and fail to provide a plaintiff with any notice as to how the defense applies to the plaintiff's claims." *Coach*, 756 F.Supp.2d at 425.

Without mentioning any of the misconduct allegedly at issue, or identifying the specific parties involved, CTI's Sixth Affirmative Defense alleges that GEOMC's damages were caused by "their own negligence misconduct and actions or that third parties including but not limited to counter-claim defendant." CTI's Seventh Affirmative Defense states only that "Plaintiff has failed to join a necessary party." Answer to Second Am. Compl. ¶¶ 95-96. It is hard to discern from these statements what misconduct has been alleged or which parties should be involved.

These vague and unsupported allegations fail to provide the required notice and would result in undue prejudice to GEOMC. GEOMC's motion to strike is granted with respect to CTI's Sixth and Seventh Affirmative Defenses.

### c. Counterclaims

Finally, GEOMC seeks to strike five of the six new counterclaims alleged by CTI in its amended Answer. Pl. Mem. in Supp. at 17-19. GEOMC does not take issue with CTI's Fourth Counterclaim, which alleges overpayment under the contract between the parties, as that counterclaim is specific to the parties and relates directly to the contractual agreement at issue. *Id*. at 18. However, GEOMC argues that all other counterclaims "dramatically expand the scope of the case" and should be stricken. *Id*. at 17-18. The Court agrees.

CTI's new counterclaims mostly relate to separate contractual agreements involving third parties that were not mentioned in GEOMC's Second Amended Complaint. These counterclaims undeniably expand the scope of the litigation by alleging misconduct on the part of GEOMC in connection with those other contracts, resulting in prejudice to GEOMC. Answer to Second Am. Compl. at ¶¶131-159.

CTI's First Counterclaim involves a separate licensing agreement between the parties and alleges that GEOMC breached this agreement by "producing devices for Radiant." *Id*. at ¶¶ 131-

134.  "Radiant" is an unrelated entity and has never been made a party to this case.  CTI's Second and Sixth Counterclaims further allege that GEOMC's interactions with Radiant constituted tortious interference with CTI's business agreements, including a separate manufacturing license agreement between CTI and another third party by the name of "Delta."  *Id*. at ¶¶ 135-137.  Delta is also an unrelated entity that has never been made a party to this case.  CTI's Fifth Counterclaim reiterates the same allegations and claims that they violated the Lanham Act and "state law."  *Id*. at ¶¶ 151-154.   Finally, CTI's Third Counterclaim alleges generally that GEOMC "knew or should have known that Johnie Johnson was entering into ultra vires agreements without CTI board approval."  CTI does not include any factual allegations that would support this claim, nor does it describe a legal basis for the damages sought.  *Id*. at ¶¶ 138-142.

Striking portions of a defendant's pleading may be appropriate where, as here, their inclusion "would increase the duration and expense of trial" and where "Plaintiffs would incur increased discovery costs in having to explore the factual basis for these defenses."  *Coach*, 756 F.Supp.2d at 428.  The inclusion of additional contractual agreements and numerous third parties not named in this lawsuit would not only greatly expand the relatively narrow scope of this case; it would prejudice GEOMC by substantially increasing the cost and time required to litigate this matter.

In light of this Court's discretion to grant motions to strike to prevent confusion, delay and prejudice from the inclusion of "immaterial" and "impertinent" pleadings, Fed. R. Civ. P. 12(f), GEOMC's motion to strike is granted with respect to CTI's counterclaims.

## IV. CONCLUSION

GEOMC's Motion to Strike is **GRANTED IN PART and DENIED IN PART**. CTI's Sixth Affirmative Defense and Seventh Affirmative Defense are stricken from the Answer to the Second Amended Complaint. Answer to Second Am. Compl. at ¶¶ 95-96. CTI's First, Second, Third, Fifth and Sixth Counterclaims are similarly stricken from the Answer to the Second Amended Complaint. *Id*. at ¶¶ 131-142, 151-159. All other responses, affirmative defenses and counterclaims may remain.

SO ORDERED this 19th day of October, 2016 at Bridgeport, Connecticut.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE