# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

GEOMC CO., LTD,
    *Plaintiff*,

    v.

CALMARE THERAPEUTICS, INC.,
    *Defendant*.

No. 3:14-cv-01222 (VAB)

## RULING AND ORDER ON DISCOVERY DISPUTES

GEOMC Co., Ltd. ("GEOMC" or "Plaintiff") and Calmare Therapeutics, Inc., ("Calmare" or "Defendant") have jointly requested that the Court resolve a set of outstanding discovery disputes, as outlined in the parties' Joint Status Report and Joint Motion. Joint Status Report, ECF No. 321 (Sept. 25, 2020); Joint Mot. for Discovery Conf., ECF No. 261 (Dec. 10, 2019) ("Joint Mot.").

The Court sets forth its findings as to the outstanding discovery disputes within.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Familiarity with the factual allegations and procedural history of this action is assumed. *See* Summ. Order, ECF No. 244 (Mar. 14, 2019); Mandate, ECF No. 245 (June 4, 2019).

On March 14, 2019, the Second Circuit issued a summary order vacating the Court's September 29, 2017 judgment and remanding the case for further proceedings consistent with the summary order. Summ. Order.

On July 3, 2019, the Court issued a scheduling order setting November 22, 2019, as the deadline for the completion of discovery. Stipulation and Scheduling Order, ECF No. 250 (July 3, 2019).

On November 12, 2019, the parties jointly moved for an extension of time to complete discovery. Joint Mot. for Extension of Time, ECF No. 254 (Nov. 12, 2019). The next day, the Court granted the motion. Order, ECF No. 255 (Nov. 13, 2019).

On December 10, 2019, the parties jointly moved for a discovery conference, stating that although they had met and conferred in good faith, they were unable to resolve a series of discovery disputes. Joint Mot. The next day, the Court scheduled a discovery conference for January 6, 2020. Order, ECF No. 264 (Dec. 11, 2019).

On December 20, 2019, the parties provided their respective submissions on issues to be addressed at the discovery conference. *See* GEOMC Submission, ECF No. 265 (Dec. 20, 2019); Calmare Submission, ECF No. 266 (Dec. 20, 2019). On January 3, 2020, the parties filed their respective responses. *See* GEOMC Resp., ECF No. 270 (Jan. 3, 2019); Calmare Resp., ECF No. 271 (Jan. 3, 2019).

After several adjournments, *see* Order, ECF No. 268 (Jan. 3, 2020); Order, ECF No. 277 (Jan. 8, 2020); Order, ECF No. 280 (Jan. 14, 2020); Order, ECF No. 285 (Feb. 7, 2020), the status conference was cancelled, *see* Cancellation Notice (Mar. 6, 2020).

On July 17, 2020, GEOMC moved for a telephonic status conference, noting that they had retained new counsel. Mot. for Status Conference, ECF No. 307 (July 17, 2020). On July 20, 2020, the Court granted the motion, Order, ECF No. 308 (July 20, 2020).

On August 18, 2020, following a status conference, the Court ordered that the parties, by September 25, 2020, file a joint status report to include any outstanding discovery issues and a proposed schedule. Order, ECF No. 318 (Aug. 18, 2020).

On September 25, 2020, the parties filed a joint status report. Joint Status Report. The report stated that though the parties had met and conferred in good faith, they were unable to resolve the majority of the issues identified in the Joint Motion.[1] *Id.* at 1.

On October 6, 2020, the Court held a discovery conference by Zoom to discuss the Joint Status Report. Min. Entry, ECF No. 326 (Oct. 6, 2020).

## II.    STANDARD OF REVIEW

### A.  Scope of Discovery

Rule 26 of the Federal Rules of Civil Procedure provides in relevant part that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). The advisory committee's notes to the 2015 amendment of Rule 26 further explain:

> A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them. The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery.

*Id.*, Advisory Committee's Note to 2015 Amendment.

"Even after the 2015 amendments, '[r]elevance is still to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense.'" *Bagley v. Yale Univ.*, No. 3:13-cv-01890 (CSH), 2015 WL

---

[1] Specifically, the Joint Status Report stated that they parties had resolved only "one issue identified in the Joint Motion[:] (Item A(1)(a))." *Id.*

8750901, at *7 (D. Conn. Dec. 14, 2015) (quoting *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14 Civ. 9792, 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015)). "Where the discovery sought is relevant, the party seeking production bears the burden of showing that good cause exists to grant the motion." *Melillo v. Brais*, No. 3:17-cv-520 (VAB), 2018 WL 306698, at *1 (D. Conn. Jan. 5, 2018). Once the party seeking discovery has demonstrated relevance, "[t]he objecting party bears the burden of demonstrating specifically how, despite the broad and liberal construction afforded [by] the federal discovery rules, each request is not relevant or how each question is overly broad, unduly burdensome or oppressive." *Klein v. AIG Trading Grp.*, 228 F.R.D. 418, 422 (D. Conn. 2005) (internal alterations and quotation marks omitted).

Under Rule 26(b)(1), as amended, "the Court must [also] determine whether the discovery sought is proportional to the needs of the case," and is permitted to limit certain discovery that is "not proportional" "[e]ven if relevant to the case." *Hybrid Athletics, LLC v. Hylete, LLC*, No. 3:17-cv-1767 (VAB), 2019 WL 4143035, at *10 (D. Conn. Aug. 30, 2019) (quoting *Metcalf v. Yale Univ.*, No. 3:15-cv-1696 (VAB), 2017 WL 6614255, at * 2 (D. Conn. Dec. 27, 2017)). "The proportionality determination limits the scope of discovery by considering the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the importance of discovery in resolving the issues, and whether the burden or expense outweighs the likely benefit of the discovery sought." *Taveras v. Semple*, No. 3:15-cv-531 (VAB), 2020 WL 3489529, at *7 (D. Conn. June 27, 2020) (internal alterations and quotation marks omitted).

The district court has "wide latitude to determine the scope of discovery." *In Re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008); *Mirra v. Jordan*, No. 13-CV-5519, 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016) ("Motions to compel are left to the court's sound discretion."); *see also Favale v. Roman Catholic Diocese of Bridgeport*, 235 F.R.D. 553, 558 (D.

Conn. 2006) ("The district court enjoys broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled." (quoting *Yancey v. Hooten*, 180 F.R.D. 203, 207 (D. Conn. 1998) (internal quotation marks omitted)).

## III.   DISCUSSION

The parties have asked the Court to "resolve[] the outstanding discovery disputes" outlined in the Joint Motion. Joint Status Report at 1. The Court therefore addresses each of the outstanding disputes identified in the Joint Motion in turn.

### A.  Discovery Disputes in the Joint Motion

#### 1.   General Objections

##### a.   Confidential Information

The parties represent that they have resolved issue (1)(a) in the Joint Motion, or the parties' general objection regarding confidential information. Joint Status Report at 1. The Court therefore does not rule on this issue.

##### b.   GEOMC's Device Sales Outside of Korea

Calmare contends that it is entitled to information regarding GEOMC's sales of Devices to customers outside of Korea. Calmare Submission at 1-2. As Calmare argues, the "issue on remand is GEOMC's set-off payments," *id.* at 1, and "[n]either [the relevant provision in the License Agreement] nor any other provision limits GEOMC's set-off payment obligations to its sales in Korea," *id.* at 2. Calmare contends it is thus entitled under the Summary Order to discovery as to the number of Devices sold by GEOMC "without any geographic limitation." *Id.*

GEOMC argues that the Summary Order limits the scope of discovery on remand as to the set-off based only "on sales on Devices by GEOMC in ***Korea***." GEOMC Submission at 1

(emphasis in original). As GEOMC argues, "[t]here is no issue in this case related to GEOMC's sales, to entities other than Calmare, in any country other than Korea." *Id.* at 2.

The Court agrees.

The Second Circuit's Summary Order explicitly narrowed the scope of discovery on remand to sales of Devices by GEOMC in Korea alone. The Second Circuit concluded that this Court "exceeded its discretion by denying Calmare the opportunity to introduce evidence of the amounts, if any, that GEOMC owes Calmare for sales of Devices in Korea," and ordered, accordingly, that "[o]n remand, the District Court should allow Calmare limited discovery as to the number of Devices sold by GEOMC and the prices of such sales and then determine what amount of set-off, if any, Calmare is entitled to." Summary Order at 7. The Second Circuit also noted that "it remains to be determined, on remand . . . the amount, if any, GEOMC owes Calmare for Devices sold in Korea . . . ." *Id.* at 8.

Reading the Second Circuit's language, alongside its framing of the issue on appeal, also shows that it intended to limit the scope of its remand to GEOMC's Device sales in Korea. As the Second Circuit highlighted, the relevant dispute arose in part because "Calmare sent GEOMC a discovery request, asking GEOMC, among other things, to '[i]dentify the total number of [D]evices sold in South Korea from 2013 through 2016, including the price paid for each sale," and because "Calmare also asked GEOMC's CEO in a deposition how many Devices GEOMC sold in Korea and at what price." *Id.* at 7 (alterations in original).

The Second Circuit also noted that the set-off question at issue arose under the Korea Agreement, under which "Calmare delegated to GEOMC the authority to designate the exclusive distributor of the Devices in Korea under the same conditions set forth in the [2007 License], *i.e.*, to pay Calmare 50 percent of the profits from sales. . . ." *Id.* at 6 (internal quotation marks omitted).

As the court stated, "[a]nticipating Calmare's argument that any money it owed GEOMC should be offset by money GEOMC failed to pay Calmare for GEOMC's sales in Korea, GEOMC moved before trial to exclude evidence of such sales," a motion this Court granted in part because "Calmare did not make any 'meaningful discovery' in connection with sales in Korea" and "admitting evidence of GEOMC's Korea sales claim would 'contradict the "law of the case" doctrine.'" *Id.*

Moreover, Calmare, in its appellate briefing, framed the relevant issue as Korea alone, and asked the Second Circuit to decide whether "[t]he District Court [erroneously] declined to consider evidence of Calmare's overpayments to GEOMC or set-off payments for GEOMC's sales of the Devices in Korea, pursuant to the parties' Korea Distributorship Agreement[.]" Br. of Def.-Counter-Claimant-Appellant Calmare Therapeutics Inc. at 2, Summ. Order; *see also id.* at 5 ("the District Court erred . . . in excluding from trial evidence regarding GEOMC's own device sales in Korea, sales for which Calmare was entitled to receive substantial compensation payments"); *id.* at 19 ("Throughout discovery, Calmare repeatedly sought information regarding GEOMC's Device sales in Korea—sales that would set-off amounts that Calmare purportedly owed to GEOMC—consistent with Calmare's Set-Off Defense."); *id.* at 26 ("the District Court's damages calculation is erroneous because it fails to consider . . . the substantial amounts that GEOMC owes to Calmare for GEOMC's sales of the Devices in Korea, as pled in Calmare's Set-Off Defense.").

The Second Circuit's Summary Order, as well as Calmare's own filings, makes clear that the Second Circuit intended the scope of discovery on remand to encompass GEOMC's sales in Korea alone.

Accordingly, Calmare is not entitled to discovery as to the GEOMC's sales of Devices to purchasers located in countries other than Korea.

### 2.   Scope of Discovery

#### a.   Calmare's Right to Sell, or Authorize GEOMC to Sell, Devices in Korea

GEOMC argues that it is entitled to discover "whether or not Calmare had the right to sell Devices in Korea, or the right to authorize GEOMC to make such sales." GEOMC Submission at 2. GEOMC argues that "[n]o court has ruled upon the question of GEOMC's alleged liability to Calmare based on GEOMC's sales in Korea," and that the Second Circuit "did not resolve whether GEOMC was liable to pay Calmare for those sales." *Id.*

As GEOMC claims, it does not owe Calmare anything for Devices that GEOMC sold in Korea, in part, because "Calmare and GEOMC agreed that GEOMC has no liability to Calmare for such sales," *id.* at 2, an agreement GEOMC alleges took place "at a meeting in Rome," where the parties allegedly "agreed that GEOMC would not need to remit payment for Devices that GEOMC sold in Korea."  GEOMC Resp. at 2 & n.3.

GEOMC argues further that it is not liable to Calmare because "all but three of the Devices that GEOMC sold in Korea were sales made [under] an agreement between GEOMC and DIS&L (which held the rights to the Devices) and were made during a period of time when Calmare's sales territory excluded Korea." GEOMC Submission at 2. GEOMC therefore argues that discovery is necessary because "[b]efore calculating the amount of any offset based on GEOMC's sales of Devices in Korea, Calmare must first establish that GEOMC was liable to pay Calmare for such sales." GEOMC Resp. at 2.

Calmare argues that this issue is "irrelevant . . . on remand" because "[n]either the License Agreement nor the MOU [(Memorandum of Understanding)] conditions" GEOMC's obligation to pay Calmare "on whether Calmare had the right to sell devices in Korea or authorize GEOMC to make sales." Calmare Submission at 2. Calmare therefore contends that it is "entitled to payments

for GEOMC's sales of Devices in Korea or anywhere else sales are made (regardless of whether Calmare is authorized to sell there)." *Id.*

The Court disagrees.

The alleged Rome agreement is relevant to determining GEOMC's liability to Calmare. The Court therefore finds that GEOMC is entitled to limited discovery on the narrow question of the alleged Rome agreement's impact on GEOMC's obligations to pay Calmare for Devices sold in Korea. GEOMC represented at the parties' October 5, 2020 status conference, however, that it already had access to relevant documentation in the form of written agreements it alleges arose from the Rome meeting.

Given the importance of proportionality considerations, such as "the parties' relative access to relevant information," *see Taveras*, 2020 WL 3489529, at *7, the Court therefore allows further discovery as to the Rome agreement only to the extent it is necessary to depose again Johnie Johnson, Calmare's former CEO, on this limited issue.

### b.   GEOMC's Sales of Devices, Bills of Lading, Shipping and Freight Forwarding Records, and Assembly Records (Items 2(b), (f), (g), and (h))

Calmare argues that with respect to items 2(b), (f), (g), and (h) of the Joint Motion it is entitled to discovery of various GEOMC records bearing on the question of the number of devices GEOMC sold in Korea. Calmare Submission at 2-3. Specifically, Calmare requests discovery regarding "[b]ills of lading related to GEOMC's shipment of Devices," "[i]nformation regarding shipping companies and freight forwarders that GEOMC utilized to ship Devices and/or converters to Calmare," the "number of Devices GEOMC assembled," "entities that GEOMC utilized to assemble or design the Devices." *Id.* at 3-4. Calmare argues that discovery as to each of these categories will enable it to confirm GEOMC's reported sales. *See id.* at 3.

GEOMC argues that the discovery Calmare seeks is "unnecessary, disproportionate and not within the proper scope of discovery under Fed. R. Civ. P. 26(b)(1)." GEOMC Submission at 3. GEOMC argues that it "has already produced documents and information showing the number of Devices it sold to purchasers in Korea, and the date and price of each sale," including "sales contracts, purchase orders, invoices, shipping documents, and sales receipts." *Id.* With respect to information related to the shipment of Devices and converts to Calmare, GEOMC argues that "[t]here is no outstanding issue in this case related to the shipment of Devices to Calmare" because "the Court has already made findings of fact, that were not challenged on appeal, regarding the number and timing of Devices shipped to Calmare." *Id.*

Calmare responds that the requests are relevant because "Calmare has reason to believe that GEOMC sold additional Devices that it had told Calmare were 'lost,' and thus owes additional set-off payments." Calmare Resp. at 2; *see also id.* at 3 (the requested discovery as to shipping companies, freight forwarders, and assembly companies would "help Calmare determine whether GEOMC's self-reporting of its Device sales is accurate—*i.e.*, whether it failed to account for Devices that GEOMC claims were 'lost' during shipping but were either sold by GEOMC to third parties or were assembled on behalf of GEOMC without Calmare's knowledge.")

The Court disagrees.

While several of Calmare's discovery requests are relevant, as they "reasonably could lead to other matter[s] that could bear on any party's claim or defense," *Bagley*, 2015 WL 8750901, at *7, the broad discovery Calmare seeks, [e]ven if relevant," is not "proportional to the needs of the case," *Hybrid Athletics, LLC*, 2019 WL 4143035, at *10, and is "unreasonably cumulative or duplicative," Fed. R. Civ. P. 26(b)(2)(C)(i).

Though Calmare is entitled to discovery of GEOMC's sales in Korea, *see* Section 1.b, *supra*, Calmare seeks discovery into GEOMC's shipping records, bills of lading, assembly records and freight forwarding arrangements. But Calmare has not shown that these additional avenues of discovery will yield information beyond what may be reflected in sales records such as invoices and receipts, or that the "burden or expense" of these requests "outweighs the likely benefit of the discovery sought." *Taveras*, 2020 WL 3489529, at *7 (internal quotation mark omitted). The Court also agrees that it previously made a finding of fact as to the number of devices shipped to Calmare by GEOMC, a point Calmare concedes, *see* Calmare Resp. at 2 ("[A]lthough the Court previously made findings of fact regarding GEOMC's shipments, those findings do not relieve GEOMC of its discovery obligations."), and therefore finds that further discovery as to this issue would be duplicative under Rule 26. Fed. R. Civ. P. 26(b)(2)(C)(i).

Accordingly, the production of any documents relating to the sales of Devices by GEOMC in Korea, including but not limited to sales contracts, invoices, purchase orders, receipts and other documentation of sales, is sufficient to satisfy the limited remand ordered by the Second Circuit in its Summary Order, and does not permit Calmare discovery into the "[b]ills of lading related to GEOMC's shipment of Devices," "[i]nformation regarding shipping companies and freight forwarders that GEOMC utilized to ship Devices and/or converts to Calmare," "the number of Devices GEOMC assembled," and "entities that GEOMC utilized to assemble or design the Devices," Calmare Submission 3-4.

This denial is without prejudice to renewal, to the extent that Calmare has support for its "belie[f] that GEOMC sold additional devices that it had told Calmare were 'lost,'" Calmare Resp. at 2, that the discovery of the sales-related documentation outlined above is insufficient, and can provide the Court with additional information showing a basis for any additional discovery.

c. **Calmare's Sales of Devices in Korea, Leased Devices, and Inventory Records (Items 2(c), (d), and (e))**

GEOMC, like Calmare, argues that it too is entitled to various records bearing on the question of the number of Devices sold by the other party. Specifically, GEOMC requests "information about Devices sold or leased to third parties by Calmare since January 9, 2017," and "the number of Devices that remain in Calmare's inventory," which GEOMC claims "can be subtracted from the number of Devices that GEOMC delivered to determine for how many Devices GEOMC should be paid." GEOMC Submission at 3.

Calmare argues that it has already provided "GEOMC with the number of Devices that it sold from January 1, 2017 to October 4, 2019," information which "includes all sales since Calmare's January 9, 2017 interrogatory responses." Calmare Resp. at 3. Calmare notes further that it is "willing to produce invoices reflecting its sales since January 1, 2017, with identifying customer names and dates redacted." *Id.*; Calmare Submission at 1. With respect to leased Devices, Calmare argues that this discovery is "not relevant" because "[n]either the parties' agreements nor the Summary Order requires Calmare to make payments for any purportedly 'leased' Devices." *Id.* With respect to inventory records, Calmare argues that this "is also not relevant on remand, as Devices in inventory have not been sold, and Calmare does not owe GEOMC any payments for unsold Devices." *Id.*

The Court agrees.

Though GEOMC argues that in order to "determine the amounts due between the parties, [it] must discovery information about Devices sold or leased to third parties" and "the number of Devices that remain in Calmare's inventory," GEOMC Submission at 3, like Calmare, GEOMC provides no basis for why discovery of records, including but not limited to sales contracts, invoices, purchase orders, receipts and other documentation of sales, would not be sufficient to

satisfy the limited remand ordered by the Second Circuit in its Summary Order. Nor does GEOMC provide any basis for its position that discovery pertaining to leased, but unsold, Devices, or regarding the Devices that remain in Calmare's inventory, would yield information that the disclosure of sales records described above would not.

Accordingly, for the reasons discussed above, as well as those discussed in the Court's analysis of Calmare's requests as to GEOMC's bills of lading, inventory, shipping, assembly, and freight forwarding records, *see* Section 2.b, *supra*, even if GEOMC's requests as to leasing and inventory records are relevant, these discovery requests are not "proportional to the needs of the case," *Hybrid Athletics, LLC*, 2019 WL 4143035, at *10, and, without more, would be "unreasonably cumulative or duplicative," Fed. R. Civ. P. 26(b)(2)(C)(i).

This denial is without prejudice to renewal, to the extent that GEOMC has support for its belief that any representation Calmare makes as to its sales records as outlined above, such that this discovery would be insufficient, and can provide the Court with additional information showing a basis for such discovery.

### d. GEOMC's Third-Party Communications (Item 2(i))

Calmare argues that it is entitled to "[d]ocuments regarding GEOMC's communications with" various third parties, including Giuseppe Marineo, Life Episteme Italia, Life Episteme Switzerland, Dr. Domenico Pecorini, Mediterranean Integration and Technology, Mohammad Kassab, Omar Kassab, and Umberto Marangoni, because these third-party communications are "relevant to the issues of whether GEOMC may withhold payments to Calmare, and the extent of GEOMC's set-off liability." Calmare Submission at 4. Calmare also argues that GEOMC has "admit[ted] that much of its attempt to escape liability for set-off payments relies on an agreement

with a different third party," and that "GEOMC cannot pick-and-choose which third party agreements or communications it deems relevant to the outstanding issues." Calmare Resp. at 4.

GEOMC argues that "[t]he requested documents are unrelated to GEOMC's sales of Devices in Korea[] and go far beyond the narrow scope of discovery ordered by the Second Circuit." GEOMC Resp. at 5.

The Court agrees.

Calmare has not provided any basis for its assertion that these third-party communications are relevant to the limited question on remand to which this request pertains: the sales of Devices in Korea. And though the Court recognizes that relevance is "construed broadly," *Bagley*, 2015 WL 8750901, at *7, nonetheless, beyond the conclusory assertions that these communications are relevant, Calmare has not sufficiently "explain[ed] the ways in which the underlying information bears on the issues as that party understands them." Fed. R. Civ. P. 26(b)(1), Advisory Committee's Note to 2015 Amendment. Even if relevant, Calmare has not demonstrated, under the proportionality standard, "the importance of [this] discovery in resolving the issues," nor that "the burden or expense . . . outweighs the likely benefit of the discovery sought." *Taveras*, 2020 WL 3489529, at *7 (internal quotation mark omitted).

Accordingly, the discovery of these third-party communications is denied.

This denial is without prejudice to renewal, to the extent Calmare can identify discovery of third-party entities of individuals related to the parties' sales in Korea, and can provide the Court with additional information showing a basis for such discovery.

### e.  Calmare's Insurance Coverage of the Devices (Item 2(j))

GEOMC argues that it is entitled to the production of "insurance policies [Calmare] maintained covering Devices in Calmare's possession, custody, or control, or stored in warehouses

at Calmare's discretion." GEOMC Submission at 4-5. GEOMC contends that "[o]n remand, the Court must re-determine whether a default under the Security Agreement has occurred," and that, because "[t]he Security Agreement requires Calmare to insure the Devices, . . . failure to maintain insurance would be a breach of the Security Agreement." *Id.* at 5.

Calmare argues that this issue is "not relevant on remand" because "[t]he Summary Order did not address insurance coverage" and "GEOMC has no basis . . . to seek this information." Calmare Submission at 2. Calmare argues further that any argument from GEOMC that "maintenance of insurance is relevant to whether there was an event of default under the Security Agreement" fails because "[i]n remanding this case to address narrow issues regarding Calmare's set-off defense, the Second Circuit *did not* open the door for GEOMC to explore other potential claims or theories of liability." *Id.* (emphasis in original).

GEOMC responds that the Summary Order "note[d] that it was necessary to redetermine breach of the Security Agreement on remand," and that "[p]roducing insurance policies is narrow, reasonable, and does not impose a burden on Calmare." GEOMC Resp. at 5.

The Second Circuit's Summary Order addressed the question of "whether an 'event of default' under the Security Agreement occurred," Summary Order at 3, and noted that this Court ruled at summary judgment "that Calmare's failure to pay GEOMC upon delivery of Devices was an 'Event of Default' under the Security Agreement," *id.* at 7-8. As the Second Circuit held, because it concluded elsewhere in the Summary Order "that payment was not required from Calmare until Devices were sold to Calmare's customers and because it remains to be determined, on remand, the amount Calmare owes GEOMC . . . and the amount, if any, GEOMC owes Calmare," "the ruling on 'Event of Default' must be vacated, and breach of the Security Agreement

redetermined." *Id.* at 8. The Second Circuit concluded that "it remains to be determined on remand whether an Event of Default under the Security Agreement has occurred." *Id.*

Though the Second Circuit's analysis primarily contemplated whether any failure by Calmare to pay GEOMC would constitute a breach of the Security Agreement, rather than any and all potential breaches, it elsewhere, in discussing the equitable portions of the district court's judgment, noted that "[i]f it is determined on remand that Calmare is in default for failing to pay GEOMC what is owed for sales to Calmare's customers, GEOMC's repossession of Devices remaining in Calmare's custody and their sale will be proper even if the value of those Devices exceeds the amount owed," a "remedy [that] is precisely what the Security Agreement provides." *Id.*

Given GEOMC's potential interest in Devices in Calmare's custody, as identified in the Summary Order, information as to Calmare's insurance of any Devices in its possession is relevant, as it could "bear[] on, or . . . reasonably could lead to other matter[s] that could bear on any party's claim or defense." *Bagley*, 2015 WL 8750901, at *7. And the narrow request as to production of these insurance policies is not "overly broad, unduly burdensome or oppressive," *Klein*, 228 F.R.D. at 422, such that this production "outweighs the likely benefit of the discovery sought," *Taveras*, 2020 WL 3489528, at *7.

Accordingly, while the Court does not, and need not now, decide whether any failure by Calmare to properly insure any of its facilities or devices would legally constitute a breach of the Security Agreement, it permits limited discovery into Calmare's insurance coverage of the Devices in its possession, custody, or control.

### 3.   Scope of Depositions and Deposition of Young H. Lim

Calmare argues that it is entitled to depose GEOMC CEO Young H. Lim. Calmare
Submission at 4. Calmare argues that although GEOMC has designated Seung Bum Oh, as its Rule
30(b)(6) witness, "the deposition of Ms. Lim would be an individual deposition that could result
in additional relevant information not discussed with Mr. Oh." *Id.* (internal quotation marks
omitted). Calmare argues that "it is likely that Ms. Lim has additional information to which Mr.
Oh is not privy," both because "as the CEO of GEOMC, she makes *all* final substantive decisions
for GEOMC," and because "when she was previously deposed, she had information not disclosed
by Mr. Oh—specifically, the number of Devices that GEOMC had sold (a key issue on remand)."
*Id.* (emphasis in original).

In Calmare's view, the need to depose Ms. Lim is "even stronger now than it was before
trial, as the Summary Order expressly permits Calmare to conduct discovery into GEOMC's sales
of Devices, a right that Calmare was not granted prior to the appeal." *Id.* Calmare also notes that
this Court has previously compelled the testimony of Ms. Lim as an individual witness, in part
because the deposition "could result in additional relevant information not discussed with Mr. Oh."
*Id.* (citing Ruling on Mot. to Compel, ECF No. 168 at 3-4 (May 25, 2017)).

GEOMC argues that Ms. Lim's deposition is "unnecessary and duplicative of the
individual and Rule 30(b)(6) deposition of [Mr.] Oh," and that "[t]here is no basis for Calmare's
claim that Ms. Lim likely has additional information to which Mr. Oh is not privy." GEOMC Resp.
at 5. GEOMC argues that "[g]iven how narrow the issues are on remand, it is disproportionate and
unreasonably burdensome and costly to depose both Ms. Lim and Mr. Oh, both of whom live in
Korea." *Id.*

The Court disagrees.

In its Ruling on the Motion to Compel, the Court rejected GEOMC's argument that Calmare was not entitled to depose Ms. Lim because it had already obtained all of the necessary information through its Rule 30(b)(6) deposition of Mr. Oh. *See* Ruling on Mot. to Compel at 3. The Court found that because "the deposition of Ms. Lim would not be a Rule 30(b)(6) deposition, . . . [it] could result in additional relevant information not discussed with Mr. Oh." *Id*. at 3-4. As a result, "the Court [was] not convinced that Ms. Lim's testimony would be entirely duplicative of Mr. Oh's testimony," and found that "Ms. Lim's deposition should not be precluded on this basis." *Id*. at 4.

The Court sees no basis to rule differently here, because, as the Second Circuit noted in its Summary Order, Ms. Lim has particular knowledge as to Devices GEOMC sold in Korea. *See* Summary Order at 7 (noting that Calmare in its previous deposition of Ms. Lim asked her "how many Devices GEOMC sold in Korea and at what price," and she "partially responded, stating, '[a]bout, more or less, 30,' but declined to disclose how many were sold after August 22, 2014, because her attorney advised her that was 'confidential information.'" (alteration in original)). The Court is similarly unconvinced, as it was in 2017, that Ms. Lim's testimony would be entirely duplicative of Mr. Oh's testimony, and finds her testimony to be particularly relevant given her demonstrated knowledge of the key issue on remand.

Accordingly, the Court grants Calmare leave to depose Ms. Lim again only as to the issue of her knowledge as to the Devices GEOMC sold in Korea.

### 4. Calmare's Request to Claw Back Documents

Calmare argues that it is entitled to claw back "certain inadvertently produced documents reflecting communications by previous counsel." Calmare Submission at 4. Calmare argues that despite having taken "reasonable precautions," including "a screening procedure to remove all

privileged communications from three different firms," it did not include the two firms at issue in its privilege screen because counsel was unaware that these attorneys had previously represented Calmare. *Id.* at 5. Calmare argues further that it timely rectified the error; that the extent of the disclosure weighs against a finding that Calmare waived any privilege; and that overarching issues of fairness weigh in favor of a claw-back because GEOMC does not "claim that it intends to use any of the documents at issue to support its claims." *Id*.

GEOMC argues that Calmare is not entitled to claw back the requested documents because "Calmare failed to take reasonable steps to prevent inadvertent disclosure." GEOMC Submission at 5. GEOMC argues that "[s]ome of the documents [at issue] are plainly non-privileged" and that "Calmare has not provided a privilege log." *Id.* GEOMC argues further that because "Calmare's production is largely irrelevant material (including junk mail) dating from 2010-2013," "nothing in the production . . . would [have] put GEOMC on notice that an inadvertent production of privileged material had been made." GEOMC Resp. at 6.

GEOMC has not represented that it believes the allegedly privileged material to be relevant—to the contrary, it acknowledged at the parties' October 6, 2020 scheduling conference that it expected not to rely upon any of the documents at issue, and acknowledged in its Submission that the allegedly privileged material is "largely irrelevant" to the scope of discovery on remand. *Id.* Because that the parties do not currently seek to introduce any of the challenged documents into evidence, the Court declines to rule on the question of whether Calmare may claw back the allegedly privileged documents.

Instead, the Court orders that GEOMC not use or otherwise distribute the documents at issue until such time, if ever, that GEOMC finds use of any of the privileged documents necessary,

at which point GEOMC may move the Court for use of these documents and Calmare will be provided an opportunity to raise any objections to their use at that time.

## IV.   CONCLUSION

As the Court discussed with the parties during the October 6, 2020, Zoom status conference, the discovery disputes in this case appear to have complicated an expeditious resolution. Accordingly, in the interest of judicial economy and consistent with this Court's inherent authority to manage its docket to resolve cases efficiently and expediently, *Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016), and in accordance with the foregoing analysis, the Court rules as follows with respect to the discovery disputes outlined in the Joint Motion.

As to item 1(b), GEOMC's discovery obligations extend only to its sales of Devices in Korea.

As to item 2(a), the Court grants GEOMC leave to depose Johnie Johnson, Calmare's former CEO, only as to the alleged Rome agreement and its connection to the sale of Devices by GEOMC in Korea.

As to items 2(b), (f), (g), and (h), Calmare is entitled to the production of any and all documents related to the sales of Devices by GEOMC in Korea, including but not limited to sales contracts, invoices, purchase orders, receipts and other such documentation, but that Calmare's requests as to bills of lading and other shipping, assembly, and freight forwarding records are not proportional to the needs of the case under the limited remand ordered by the Second Circuit.

This denial is without prejudice to renewal, to the extent that Calmare has support for its "belie[f] that GEOMC sold additional devices that it had told Calmare were 'lost,'" Calmare Resp. at 2, such that this discovery is insufficient, and can provide the Court with additional information showing a basis for further discovery.

As to items 2(c), (d), and (e), GEOMC is entitled to the production of any and all documents related to the sales of Devices by Calmare, including but not limited to sales contracts, invoices, purchase orders, receipts and other such documentation, but GEOMC's requests as to leased devices and inventory records are not proportional to the needs of the case under the limited remand ordered by the Second Circuit.

This denial is without prejudice to renewal, to the extent that GEOMC has a basis for its belief that any representation Calmare makes as to its sales records is inaccurate, such that this discovery would be insufficient, and can provide the Court with additional information showing a basis for further discovery.

As to item 2(i), Calmare's requests for third-party communications are not proportional to the needs of the case under the limited remand ordered by the Second Circuit.

This denial is without prejudice to renewal, to the extent Calmare can identify discovery of third-party entities of individuals specifically related to GEOMC's sales in Korea, and can provide the Court with additional information showing a basis for such discovery.

As to item 2(j), the Court finds that GEOMC's request as to Calmare's insurance policies is both relevant and proportional to the needs of the case.

As to the deposition of Ms. Lim, the Court grants Calmare leave to depose Ms. Lim again only as to the issue of her knowledge as to the Devices GEOMC sold in Korea.

With respect to Calmare's request to claw back documents, the Court declines to rule on whether Calmare is entitled to claw back the documents. Instead, the Court orders that GEOMC not use or otherwise distribute the documents at issue until such time, if ever, that GEOMC finds use of any of the privileged documents necessary, at which point GEOMC may move the Court

for use of these documents and Calmare will be provided an opportunity to raise any objections to their use at that time.

To the extent that the parties require further discovery, they are directed to meet and confer regarding the scope of remaining discovery needed in light of this Ruling and Order. To the extent the parties cannot agree on what remains to be produced, they may move for a discovery conference by **November 20, 2020**.

The parties are also ordered, by **November 20, 2020**, to file a joint status report. The status report should include outstanding discovery issues, if any, left unresolved by this Ruling and Order, as well as a proposed schedule. The proposed schedule should include dates for the close of discovery, a post-discovery telephonic status conference, the filing of dispositive motions, any responses or replies to any dispositive motions, the joint trial memorandum, and trial-ready date.

The Court will hold a telephonic scheduling conference on **November 24, 2020**, **at 10:00 a.m.**

**SO ORDERED** at Bridgeport, Connecticut, this 13th day of October, 2020.

  /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge