**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| GEOMC CO., LTD.,<br>*Plaintiff*,<br><br>v.<br><br>CALMARE THERAPEUTICS, INC.,<br>*Defendant*. | No. 3:14-cv-1222 (VAB) |

**RULING ON MOTION TO QUASH**

Calmare Therapeutics, Inc. ("Plaintiff" or "Calmare") has moved to quash the third-party subpoena served in September 2020 by Defendant GEOMC Co., Ltd. ("GEOMC") on the William B. Meyer Warehouse (the "Warehouse"). Def. Calmare Therapeutics, Inc.'s Mot. to Quash or Modify GEOMC's Subpoena Served on the William B. Meyer Warehouse, ECF No. 322 (Oct. 2, 2020) ("Calmare Mot."); *see also* Subpoena to Produce Docs., Info. or Objects or to Permit Inspection of Premises in a Civil Action, ECF No. 323-1, Ex. A (Oct. 2, 2020) (the "Warehouse Subpoena").

The Warehouse Subpoena seeks "[a]ll documents and communications concerning accounts in the name of, for the account of, pertaining to, or in any other way involving . . . [Calmare] relating to the storage of Calmare scrambler therapy devices [(the "Devices")]" located at the Warehouse "from September 25, 2007 to the present[,] including but not limited to all account statements and invoices, receipts and packing slips, inventory records, audit reports, and photographs." Warehouse Subpoena, Schedule A, at 5.

Calmare argues that the GEOMC subpoena is untimely, seeks irrelevant information regarding unsold devices, and is duplicative and overbroad.

1

GEOMC argues that Calmare lacks standing to challenge the third-party subpoena and that the subpoena is timely, its requests are relevant, and it is not duplicative or overbroad.

For the reasons explained below, the motion to quash is **DENIED**.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Familiarity with the factual allegations and procedural history of this action is assumed. *See* Summ. Order, ECF No. 244 (Mar. 14, 2019); Mandate, ECF No. 245 (June 4, 2019); Ruling and Order on Discovery Disputes, ECF No. 328 (Oct. 13, 2020) (the "Discovery Order").

On March 14, 2019, the Second Circuit issued a summary order vacating the Court's September 29, 2017 judgment and remanding the case for further proceedings consistent with the summary order. Summ. Order.

On July 3, 2019, the Court issued a scheduling order setting November 22, 2019 as the deadline for the completion of discovery. Stipulation and Scheduling Order, ECF No. 250 (July 3, 2019) (the "Initial Scheduling Order").

On November 12, 2019, the parties jointly moved to amend the Initial Scheduling Order, requesting an extension of time as to the deadlines for depositions, dispositive motions, responses to dispositive motions, and reply briefs in support of dispositive motions given the parties' ongoing discovery disputes. Joint Mot. to Amend Scheduling Order, ECF No. 254 (Nov. 12, 2019) ("Joint Mot. to Amend").

On December 10, 2019, the parties jointly moved for a discovery conference, stating that although they had met and conferred in good faith, they were unable to resolve a series of discovery disputes. Joint Mot. for Discovery Conference, ECF No. 261 (Dec. 10, 2019). The next day, the Court scheduled a discovery conference for January 6, 2020. Order, ECF No. 262 (Dec. 11, 2019); Notice, ECF No. 264 (Dec. 11, 2019).

After several adjournments, *see* Order, ECF No. 268 (Jan. 3, 2020); Order, ECF No. 277 (Jan. 8, 2020); Order, ECF No. 280 (Jan. 14, 2020); Order, ECF No. 285 (Feb. 7, 2020), the status conference was cancelled, *see* Cancellation Notice (Mar. 6, 2020).

On July 17, 2020, GEOMC moved for a telephonic status conference, noting that they had retained new counsel. Mot. for Status Conference, ECF No. 307 (July 17, 2020). On July 20, 2020, the Court granted the motion, Order, ECF No. 308 (July 20, 2020).

On August 18, 2020, following the status conference, the Court ordered that the parties, by September 25, 2020, file a joint status report to include any outstanding discovery issues and a proposed schedule. Order, ECF No. 318 (Aug. 18, 2020) ("August 18, 2020 Order").

On September 8, 2020, GEOMC served a third-party subpoena on the Warehouse, setting a date of October 11, 2020, to produce the following:

> All documents and communications concerning any accounts in the name of, for the account of, pertaining to, or in any other way involving Competitive Technologies, Inc. and/or Calmare Therapeutics Incorporated relating to the storage of Calmare scrambler therapy devices (MC-5 or MC-5A) at the warehouse of William B. Meyer, Inc., 255 Long Beach Blvd., Stratford, Connecticut 06607 from September 25, 2007 to present including but not limited to all account statements and invoices, receipts and packing slips, inventory records, audit reports, and photographs.

Warehouse Subpoena, Schedule A, at 5.

On September 25, 2020, the parties filed a joint status report. Joint Status Report, ECF No. 15 (Sept. 25, 2020). The report stated that though the parties had met and conferred in good faith, they were unable to resolve many of the issues identified in the Joint Motion.[1] *Id.* at 1.

On October 2, 2020, Calmare moved to quash the Warehouse Subpoena. Calmare Mot.

---

[1] Specifically, the Joint Status Report stated that they parties had resolved only "one issue identified in the Joint Motion[:] (Item A(1)(a))." *Id.*

3

On October 6, 2020, GEOMC opposed Calmare's motion to quash. GEOMC's Opp'n to Calmare Mot., ECF No. 324 (Oct. 6, 2020) ("GEOMC Opp'n").

That same day, the Court held a discovery conference by Zoom to discuss the outstanding discovery disputes outlined in the Joint Status Report, as well as the motion to quash the Warehouse Subpoena. Minute Entry, ECF No. 326 (Oct. 6, 2020).

On October 11, 2020, the Court ordered Calmare to file its reply to GEOMC's motion in opposition by October 16, 2020 and extended the time to comply with the Warehouse Subpoena until October 26, 2020. Order, ECF No. 327 (Oct. 11, 2020).

On October 13, 2020, the Court issued a ruling and order resolving the parties' outstanding discovery disputes outlined in the Joint Motion and Joint Status Report. Discovery Order.

On October 16, 2020, Calmare filed a reply to GEOMC's opposition to Calmare's motion to quash. Def. Calmare's Reply in Support of its Mot. to Quash or Modify the Warehouse Subpoena, ECF No. 330 (Oct. 16, 2020) ("Calmare Reply").

On October 26, 2020, the Court extended the time to comply with the Warehouse Subpoena until November 6, 2020. Order, ECF No. 331 (Oct. 26, 2020).

## II. STANDARD OF REVIEW

Rule 26(b)(1) of the Federal Rules of Civil Procedure, as amended on December 1, 2015, recognizes that "[i]nformation is discoverable ... if it is relevant to any party's claim or defense and is proportional to the needs of the case." Fed. R. Civ. P. 26(b); Advisory Committee Notes to 2015 Amendments. Even after the 2015 amendments, "[r]elevance is still to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." *Bagley v. Yale Univ.*, No. 3:13-cv-01890 (CSH),

2015 WL 8750901, at *7 (D. Conn. Dec. 14, 2015) (citing *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14 Civ. 9792 (WHP) (JCF), 2015 WL 7871037 at *2 (S.D.N.Y. Dec. 12, 2015)).

Moreover, the district court has "wide latitude to determine the scope of discovery." *In Re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008); *Mirra v. Jordan*, No. 13-CV-5519 (KNF), 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016) ("Motions to compel are left to the court's sound discretion."). "The objecting party bears the burden of demonstrating specifically how, despite the broad and liberal construction afforded [by] the federal discovery rules, each request is not relevant or how each question is overly broad, unduly burdensome or oppressive." *Klein v. AIG Trading Grp. Inc.*, 228 F.R.D. 418, 422 (D. Conn. 2005) (internal citations, quotation marks, and alterations omitted).

Under Rule 45(d)(3)(A), the court "must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). Motions to quash a subpoena are "entrusted to the sound discretion of the district court." *In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003) (quoting *United States v. Sanders*, 211 F.3d 711, 720 (2d Cir. 2000)).

### III. DISCUSSION

Calmare moves to quash the Warehouse Subpoena on the grounds that it (1) is untimely, because it was allegedly served after the deadline for the end of discovery, Calmare Mot. at 5-7; (2) seeks irrelevant information, particularly unsold Devices in inventory, *id.* at 7-9; and (3) is duplicative and overbroad, because GEOMC has already requested these records from Calmare

5

and the information sought is duplicative of Calmare's already-issued interrogatory responses and forthcoming document production, *id.* at 9-11.

GEOMC responds that (1) Calmare lacks standing to quash the Warehouse Subpoena because it was issued to a third party, GEOMC Opp'n at 8-9; (2) the Warehouse Subpoena is timely, *id.* at 10-12; (3) the inventory and other records sought by the Warehouse Subpoena are relevant, *id.* at 12-14; (4) GEOMC has a secured interest in the warehouse inventory, *id.* at 14-16; and (5) the subpoena is not duplicative or overbroad, *id.* at 16-17.

Calmare responds that the Warehouse Subpoena is untimely because it was served over a year after the September 2019 for written discovery in the action, Calmare Reply at 4-5, and that the Warehouse Subpoena's requests for inventory records are particularly irrelevant, duplicative and overbroad given the Court's Discovery Order, *id.* at 5-6. Calmare reasserts that it has standing to move to quash the Warehouse Subpoena, asking the Court to rely on courts outside of this Circuit as persuasive authority, *id.* at 2-3, and argues further that the Court has discretion to *sua sponte* bar the discovery sought if it finds it to be overly burdensome, *id.* at 3.

The Court turns first to the threshold questions of whether the Warehouse Subpoena is timely and whether Calmare has standing to move to quash the Warehouse Subpoena.

**A. Timeliness**

Calmare argues that the Warehouse Subpoena was untimely served after the deadline for discovery in this case because the Court "established July 26, 2019 as the deadline for written discovery requests and September 27, 2019 as the deadline for all document production." Calmare Mot. at 6 (citing the Initial Scheduling Order). Calmare argues that although the Court has since the issuance of the Initial Scheduling Order variously extended and vacated deadlines for depositions and dispositive motions, the Court has not "indicated that a new document discovery

deadline also would be established." *Id.* As Calmare argues, GEOMC "could have sought to subpoena the Warehouse for the same inventory records sought in [the Warehouse Subpoena] before the 2019 document production deadline but chose not to do so,"*id.,* and the ongoing discovery disputes do not "give GEOMC carte blanche to conduct additional document discovery that it could have conducted before the document discovery deadline, whether of Calmare or third parties." *Id.* at 7.

GEOMC argues that the Warehouse Subpoena is timely because "[a]s shown by the Court's August 18, 2020 Order, discovery has not closed." GEOMC Opp'n at 10. GEOMC notes that "[i]n fact, the parties have yet to submit the proposed schedule referenced in that order which calls for, *inter alia*, a date for the close of discovery," and that Calmare agreed in the Joint Status Report that "various deadlines—particularly those related to the completion of discovery" had not yet been resolved. *Id*. With respect to the Initial Scheduling Order, GEOMC argues that it did not "address third party discovery" and in any event "cannot be deemed complete or closed" given the intervening discovery disputes. *Id.* at 11. GEOMC also argues that the Initial Scheduling Order was vacated upon request of the parties. *Id.* at 11 (citing Joint Motion to Amend).

Calmare argues in response that the Initial Scheduling Order set a date for all "written discovery," and subpoenas are subject to "the same time constraints that apply to all of the other methods of formal discovery." Calmare Reply at 4 (quoting Initial Scheduling Order). Calmare argues that GEOMC's assertion that the Court has yet to establish a date for the "close of discovery" is disingenuous and "takes the references to 'discovery' in the parties' prior motions and the Court's prior orders out of context." *Id.* at 4-5. In Calmare's view, "[w]hen read in context, those filings demonstrate that Court-ordered supplemental production (if any) and depositions of

witnesses are the only remaining 'discovery' in this action, for which deadlines must still be established." *Id.* at 5.

The Court disagrees.

The parties' numerous filings and the Court's orders since the Initial Scheduling Order, considered alongside the Summary Order, make clear that the discovery window remains open not only for deposition testimony but also for document production. Calmare itself argued after the Initial Scheduling Order that it was entitled to significant document production from GEOMC, including but not limited to bills of lading, the serial numbers and purchaser identities of certain Devices, "documentation such as invoices and purchase orders," "documents reflecting GEOMC's agreements and communications with . . . third parties," and "all documents reviewed, used, or referred to in responding to any of [Calmare's] interrogatories," which date back to GEOMC's sales of Devices as early as 2007. Calmare Submission, ECF No. 266 (Dec. 20, 2019); *see also* Calmare's First Set of Requests for Production of Documents on Remand to GEOMC, ECF No. 266-1, Ex. A (Dec. 20, 2019) ("Calmare Doc. Production Requests"); Calmare's First Set of Interrogatories or Remand to GEOMC, ECF No. 266-2, Ex. B (Dec. 20, 2019). In fact, Calmare's document production requests issued after the Initial Scheduling Order span seventeen categories and seek information such as "[a]ll documents, communications and correspondence" relevant to GEOMC sales of Devices. Calmare Doc. Production Requests at 8.

The Court therefore finds unpersuasive Calmare's assertion that discovery remains open only with respect to "Court-ordered supplemental production (if any) and depositions of witnesses." Calmare Reply at 5. Though Calmare may well view these requests as "supplemental production" in response to the Second Circuit's Summary Order, Calmare Reply at 5, Calmare

does not explain why the Warehouse Subpoena should be treated differently than Calmare's various document requests.

The Court agrees with Calmare that subpoenas are subject to "the same time constraints that apply to . . . the other methods of formal discovery." *Pasternak v. Dow Kim*, No. 10 Civ. 504 (LTS) (JLC), 2013 WL 1729564, at *1 (S.D.N.Y. Apr. 22, 2013). But the deadline for all written discovery has not passed, given the parties' intervening filings, the Court's intervening orders, including the August 18, 2020 Order, and Calmare's own document production requests.

Accordingly, the Warehouse Subpoena was timely filed, and the Court turns to the issue of standing.

**B. Standing**

Under Rule 45(d)(3)(A), the Court "must quash or modify a subpoena that (i) fails to allow a reasonable time to comply, (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). Motions to quash are "entrusted to the sound discretion of the district court." *In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003).

While Rule 26(b)(1)'s relevance standard governs a subpoena issued to a non-party under Rule 45, *see Warnke v. CVS Corp.*, 265 F.R.D. 64, 66 (E.D.N.Y. 2010) (citing *During v. City Univ. of N.Y.*, No. 05-cv-6992 (RCC) RLE, 2006 WL 2192843, at *2 (S.D.N.Y. Aug. 1, 2006) (collecting cases)), in the Second Circuit, "a party usually does not have standing to object to a subpoena directed to a non-party witness," *Langford v. Chrysler Motor Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975); *Estate of Ungar v. Palestinian Auth.*, 332 F. App'x 643, 645 (2d Cir. 2009) (collecting cases); *see also Jacobs v. Conn. Cmty. Tech. Colls.*, 258 F.R.D. 192, 194-95 (D. Conn. 2009)

9

("Ordinarily, a party does not have standing to move to quash a subpoena served on a third party.") (citing *Chemical Bank v. Dana*, 149 F.R.D. 11, 13 (D. Conn. 1993)).

Under Rule 45, the Court may, however, find that a party has standing to challenge a third-party subpoena if it "requires disclosure of privileged or other protected matter and no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii); *see also Jacobs*, 258 F.R.D. at 195 (finding the plaintiff had standing to challenge a third-party subpoena where "the plaintiff clearly ha[d] a personal privacy right and privilege with respect to the information" sought, his "psychiatric and mental health records"); *Dominion Resource Servs., Inc. v. Alstom Power, Inc.*, No. 3:16-cv-00544 (JCH), 2017 WL 3575892, at *4 (D. Conn. Aug. 18, 2017) (finding the plaintiff had standing to challenge a third-party subpoena "only to protect any attorney-client communications, or information protected by the work product doctrine"). "[A] challenge to a subpoena based on grounds of relevance or burden may only be raised by the entity to which the subpoena is directed; a party lacks standing to raise such challenges to a subpoena directed at a nonparty." *United States Regional Econ. Dev. Auth., LLC v. Matthews*, No. 3:16-cv-10193 (CSH), 2018 WL 2172713, at *8 (D. Conn. May 10, 2018) (observing that "any burden that may result from compliance with the subpoena would be borne by [the third party], not by Defendants"); *see also Malibu Media, LLC v. Doe No. 4*, No. 12-cv-2950 (JPO), 2012 WL 5987854, at *2 (S.D.N.Y. Nov. 30, 2012) (defendant lacked standing to move to quash a subpoena on grounds of undue burden); *A&R Body Specialty & Collision Works, Inc. v. Progressive Cas. Ins. Co.*, No. 3:07-cv-929 (WWE), 2013 WL 6511934, at *2 (D. Conn. Dec. 12, 2013) (defendant lacked standing to challenge subpoena directed to non-parties on grounds of undue burden and harassment).

Calmare argues that it nonetheless has standing to challenge the third-party Warehouse Subpoena because "other courts nationwide have held that a party has standing to raise an undue burden challenge to a non-party subpoena." Calmare Reply at 2 (collecting cases).

The Court disagrees.

This Court need not depart from the Second Circuit's guidance, echoed in courts across this Circuit, that "[i]n the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness." *Langford*, 513 F.2d at 1126; *Estate of Ungar*, 332 F. App'x at 645 (citing 91 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2459 (3d ed. 2008) ("Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought.")).

With respect to this exception, Calmare has not asserted any privacy interest or privilege arising from the subpoena, which seeks the following:

> All documents and communications concerning any accounts in the name of, for the account of, pertaining to, or in any other way involving [Calmare] relating to the storage of Calmare scrambler therapy devices (MC-5 or MC-5A) at the warehouse of William B. Meyer, Inc., . . . from September 25, 2007 to present including but not limited to all account statements and invoices, receipts and packing slips, inventory records, audit reports, and photographs.

*See* Warehouse Subpoena, Schedule A, at 5.

Courts in this Circuit have concluded that in some cases, "[i]nformation regarding a party's financial records may give rise to a privacy interest," *see KGK Jewelry LLC v. ESDNetwork*, No. 11 Civ. 9236 (LTS) (RLE), 2014 WL 1199326, at *3 (S.D.N.Y. Mar. 21, 2014) (collecting cases), particularly where discovery as to bank account records is sought from a non-party bank, *see id*. The Warehouse Subpoena, however, does not expressly implicate similar privacy concerns, and

11

Calmare asserts none; to the contrary, Calmare argues that the evidence sought from the Warehouse Subpoena is "duplicative and overbroad" of discovery it had already produced, or plans to produce. *See* Calmare Mot. at 9-10. Absent such an asserted privacy or privilege interest, Calmare does not have standing to challenge the subpoena. *See* Fed. R. Civ. P. 45(d)(3)(A)(iii). The Court therefore need not, and does not, address the relevance or burden of the evidence sought.

Accordingly, the Court will deny Calmare's motion to quash the Warehouse Subpoena.

### IV. CONCLUSION

For the reasons explained above, the motion to quash is **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut, this 30th day of October, 2020.

                                                    /s/ Victor A. Bolden
                                                  Victor A. Bolden
                                                  United States District Judge