UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

GEOMC CO., LTD,
    *Plaintiff*,

    v.

CALMARE THERAPEUTICS, INC.,
    *Defendant*.

No. 3:14-cv-01222 (VAB)

**RULING AND ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

GEOMC Co., Ltd. ("GEOMC" or "Plaintiff") has filed a motion for a temporary

restraining order ("TRO") and preliminary injunction against Calmare Therapeutics, Inc.,

("Calmare" or "Defendant"). GEOMC seeks to enjoin defendant Calmare from dissipating,

disposing or otherwise removing from storage the pain management medical devices (the

"Devices") that are the subject of this litigation. If injunctive relief is not ordered, GEOMC

moves to modify the existing scheduling order, as well as to compel discovery responses and

obtain addition discovery information.

For the reasons stated below, the Court **DENIES** the motion for a TRO and preliminary

injunction. The Court further **DENIES as moot** the motion to amend the scheduling order, and

**GRANTS in part** and **DENIES in part** the motion to compel discovery and obtain additional

discovery.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

Familiarity with the factual allegations and procedural history of this action is assumed.

*See* Summary Order, ECF No. 244 (May 14, 2019); Mandate, ECF No. 245 (June 4, 2019).

On March 14, 2019, the Second Circuit issued a summary order vacating the Court's September 29, 2017 judgment and remanding the case for further proceedings consistent with the summary order. Summary Order.

On July 3, 2019, the Court issued a scheduling order setting November 22, 2019, as the deadline for the completion of discovery. Stipulation and Scheduling Order, ECF No. 250 (July 3, 2019).

On November 12, 2019, the parties jointly moved for an extension of time to complete discovery. Joint Mot. for Extension of Time, ECF No. 254 (Nov. 12, 2019). The next day, the Court granted the motion. Order, ECF No. 255 (Nov. 13, 2019).

On December 10, 2019, the parties jointly moved for a discovery conference, stating that although they had met and conferred in good faith, they were unable to resolve a series of discovery disputes. Joint Mot. The next day, the Court scheduled a discovery conference for January 6, 2020. Order, ECF No. 264 (Dec. 11, 2019).

On December 20, 2019, the parties provided their respective submissions on issues to be addressed at the discovery conference. *See* GEOMC Submission, ECF No. 265 (Dec. 20, 2019); Calmare Submission, ECF No. 266 (Dec. 20, 2019). On January 3, 2020, the parties filed their respective responses. *See* GEOMC Response, ECF No. 270 (Jan. 3, 2019); Calmare Response, ECF No. 271 (Jan. 3, 2019).

After several adjournments, *see* Order, ECF No. 268 (Jan. 3, 2020); Order, ECF No. 277 (Jan. 8, 2020); Order, ECF No. 280 (Jan. 14, 2020); Order, ECF No. 285 (Feb. 7, 2020), the status conference was cancelled, *see* Cancellation Notice (Mar. 6, 2020).

On July 17, 2020, GEOMC moved for a telephonic status conference, noting that they had retained new counsel. Mot. for Status Conference, ECF No. 307 (July 17, 2020). On July 20, 2020, the Court granted the motion, Order, ECF No. 308 (July 20, 2020).

On August 18, 2020, following a status conference, the Court ordered that the parties, by September 25, 2020, file a joint status report to include any outstanding discovery issues and a proposed schedule. Order, ECF No. 318 (Aug. 18, 2020).

On September 25, 2020, the parties filed a joint status report. Joint Status Report, ECF No. 321 (Sept. 25, 2020) (the "Joint Status Report"). The report stated that though the parties had met and conferred in good faith, they were unable to resolve the majority of the issues identified in the Joint Motion.[1] *Id.* at 1.

On October 6, 2020, the Court held a discovery conference by Zoom to discuss the Joint Status Report. Minute Entry, ECF No. 326 (Oct. 6, 2020).

On May 11, 2021, the Court ordered an additional scheduling order as to outstanding discovery issues, including for records of sales, contracts, invoices, purchase orders, and receipts relating to the Devices. Scheduling Order, ECF No. 362 (May 11, 2021) ("May 11 Order").

On July 27, 2021, GEOMC filed an emergency motion for a TRO. Emergency Mot. for Temporary Restraining Order, ECF No. 368 (July 27, 2021).

On July 28, 2021, the Court denied the motion for a TRO without prejudice to renewal following the filing of a proper motion and memorandum of law. Order, ECF No. 369 (July 28, 2021). The Court further ordered Defendant Calmare "not to dissipate, dispose of or otherwise remove" any of the Devices from their current place until [a] discovery conference is held[.]" *Id.* The Court ordered the discovery conference *sua sponte*. *Id.*

---

[1] Specifically, the Joint Status Report stated that the parties had resolved only "one issue identified in the Joint Motion[:] (Item A(1)(a))." *Id.*

On August 5, 2021, the Court held a discovery conference via Zoom. Minute Entry, ECF No. 373 (Aug. 5, 2021). That same day, the Court granted GEOMC leave to file a formal motion for a TRO accompanied by briefing and set a schedule for such briefing and replies. ECF No. 374 (Aug. 5, 2021). In the interim, the Court declined to impose restraints on the conduct of Calmare towards the Devices. *Id.*

On August 6, 2021, GEOMC Co. filed a second emergency motion for a TRO, with an accompanying memorandum of law. Emergency Mot. for Temporary Restraining Order, ECF No. 376 (Aug. 6, 2021); Pl.'s Mem. Of Law in Support of Mot. for Temporary Restraining Order, ECF No. 376-1 (Aug. 6, 2021) ("Emergency Mot. for TRO").

On August 9, 2021, Calmare filed a motion for clarification regarding the Court's Order on August 5, 2021. Mot. for Clarification, ECF No. 377 (Aug. 9, 2021). The Court granted the motion and clarified that the Court's August 5, 2021 Order "lifted only the July 28, 2021 Order 'not to dissipate, dispose of or otherwise remove any pain management devices the subject of this litigation from their current place until this discovery conference is held [. . . .]'" Order Granting Mot. for Clarification, ECF No. 378 (Aug. 10, 2021). The Court further clarified that its order "cannot and should not be construed as adjudicating or otherwise affecting any applicable agreement between GEOMC and Calmare Technologies Incorporated regarding the pain management devices [and] . . . the rights of any party under any applicable agreement have not been altered or affected in any way by this Court's August 5, 2021 Order, ECF No. 374." *Id.*

On August 13, 2021, Calmare filed a memorandum in opposition to the emergency motion for a TRO, *see* Mem. in Opp'n, ECF No. 379 (Aug. 13, 2021) ("Opp'n"), in addition to an affidavit signed by counsel, *see* Affidavit in Opp'n to TRO Request, ECF No. 380 (Aug. 13, 2021) ("Uretsky Decl.").

On August 18, 2021, GEOMC filed a reply to the response to the emergency motion for a TRO. Reply to Resp. to Emergency Mot. for TRO, ECF No. 381 (Aug. 18, 2021) ("Reply").

On August 20, 2021, GEOMC filed a supplemental affidavit signed by counsel in support of its reply. Supp. Decl. Of Crew Schielke in Support of Mot. for TRO, ECF No. 382 (Aug. 20, 2021) ("Supp. Schielke Decl.").

On August 23, 2021, the Court ordered a hearing on the emergency motion for September 3, 2021. Notice, ECF No. 383 (Aug. 23, 2021).

On August 24, 2021, the Court granted a motion for extension of time to complete discovery and set October 28, 2021 as the discovery end date. Order Granting Mot. for Extension of Time, ECF No. 385 (Aug. 24, 2021).

On September 3, 2021, the Court held an evidentiary hearing regarding the TRO. *See* Minute Entry, ECF No. 393 (Sept. 3, 2021).

## II.      Motion for Preliminary Injunction

Preliminary injunctive relief "is an extraordinary and drastic remedy [. . .] that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (internal quotation marks and citation omitted). To show entitlement to a preliminary injunction, the moving party must demonstrate (a) that he or she will suffer "irreparable harm" in the absence of an injunction, and (b) either (1) a "likelihood of success on the merits or (2) sufficiently serious questions going to the merits [of the case] to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405–06 (2d Cir. 2011) (internal quotation marks and citation omitted). To demonstrate irreparable harm, plaintiff must show an "injury that is neither remote nor

speculative, but actual and imminent." *Grand River Enter. Six Nations, Ltd. V. Pryor*, 481 F.3d

60, 66 (2d Cir. 2007) (citation and internal quotation marks omitted); *see also City of Los

Angeles v. Lyons*, 461 U.S. 95, 111–12 (1983) (injunctive relief cannot be provided if claimed

injury is speculative or remote).

GEOMC argues that it is entitled to a preliminary injunction because it can demonstrate

(1) irreparable harm if relief is not granted restraining Calmare from moving the Devices

"outside the normal course of business," as Calmare allegedly is insolvent; and (2) a likelihood

of success on the merits based on Calmare's alleged breach of the parties' May 1, 2012 Security

Agreement ("Security Agreement"). *See* Emergency Mot. for TRO.

The Court will address each of these arguments below.

### A.  Irreparable Harm

In a motion for injunctive relief, it is the burden of the moving party to demonstrate

irreparable harm. *See Rockwell Intern. Systems, Inc. v. Citibank*, N.A., 719 F.2d 583, 586 (2d

Cir. 1983) (In a motion for injunctive relief, "the moving party . . . bears the burden of proving

irreparable injury."). Irreparable harm typically means an "injury for which a monetary award

cannot be adequate compensation[.]" *Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995) (quoting

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979) (*per curiam*)). "As

a general matter, because monetary injury can be estimated and compensated, the likelihood of

such injury usually does not constitute irreparable harm." *Brenntag Intern. Chemicals, Inc. v.

Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999) (citing *Jackson Dairy*, 596 F.2d at 72).

An exception exists to this rule where a defendant is insolvent, or where, based on the

totality of the circumstances, the court finds that a defendant is likely to frustrate any future

monetary judgment. *See Gelfand v. Stone*, 727 F. Supp. 98, 100–01 (S.D.N.Y. 1989) ("A

preliminary injunction may issue to preserve assets as security for a potential monetary judgment where the [totality of the] evidence shows that a party intends to frustrate any judgment on the merits by making it uncollectible." (citing *Republic of the Philippines v. Marcos*, 806 F.2d 344, 356 (2d Cir. 1986)); *Brenntag*, 175 F.3d at 250 ("[C]ourts have excepted from the general rule regarding monetary injury situations involving obligations owed by insolvents." (citing, *inter alia*, *Carter–Wallace, Inc. v. Davis–Edwards Pharmacal Corp.*, 443 F.2d 867, 874 (2d Cir. 1971))).

GEOMC alleges that Calmare is insolvent, and allegedly attempting to frustrate any judgment by "remov[ing] the Devices from storage to sell them without notice to GEOMC, disclosure of the sale price, payment to GEOMC and/or an accounting for any past or future sales." Emergency Mot. for TRO at 3. On these grounds, GEOMC argues that it has demonstrated irreparable harm. *Id.* at 7–8.

The Court disagrees.

Based on the filings and the evidence presented at the hearing, the allegation that Calmare intends to dissipate assets by "mov[ing] the Devices in a manner outside the normal course of business," Reply at 5, is not sufficiently supported, and therefore insufficient for the actual and concrete injury necessary to permit injunctive relief. Furthermore, the action that GEOMC seeks to restrain is specifically permitted by the Security Agreement, which states:

> [W]hile any sum payable under the terms of purchase of the Calmare machines is outstanding, [Calmare] covenants and warrants to [GEOMC] that it will . . . [g]ive [GEOMC] written notice of each location at which the Collateral is or will be kept other than for temporary processing, storage or similar purposes[,] and, except to the extent such notice is given, all Collateral shall be kept at the Connecticut Warehouse and/or the North Carolina Warehouse.

Security Agreement at ¶ 5(c). GEOMC has provided no evidence to support that Calmare has

moved or sought to move the Devices for reasons other than "temporary processing, storage or

similar purposes[.]" *Id.*

As to the insolvency exception, GEOMC has produced evidence that Calmare cannot pay

its current debts, including but not limited to evidence of a lien placed on the Devices by the

warehouse, past failure to pay attorneys, and overall net losses filed with the SEC. *See*

Emergency Mot. for TRO at 7. This evidence alone, however, does not establish irreparable

harm. Since the insolvency exception was established in the Second Circuit in *Brenntag*, the

Supreme Court held in *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S.

308, 333 (Jun. 17, 1999) that district courts have "no authority to issue a preliminary injunction

preventing petitioners from disposing of their assets pending adjudication of [a] contract claim

for money damages." *Allied Bldg. Prod. Corp. v. George Parsons Roofing & Siding, Inc.*, No.

16CV4161 (JMA) (SIL), 2017 WL 2964018, at *2 (E.D.N.Y. Mar. 31, 2017).  Courts in the

Second Circuit generally "have interpreted *Grupo* to stand for the principle that courts cannot

issue preliminary injunctions based solely on the insolvency of debtors where the plaintiffs'

underlying claims primarily seek monetary damages."  *Id.* (citing *Vis Vires Grp., Inc. v.*

*Endonovo Therapeutics, Inc.,* 149 F. Supp. 3d 376, 393 (E.D.N.Y. 2016)); *see also Levy v.*

*Young Adult Inst., Inc.*, No. 13-cv-286, 2015 WL 170442, at *6 (S.D.N.Y. Jan. 13, 2015)

("Lower courts have generally interpreted *Grupo Mexicano* to bar preliminary injunctions in

cases that seek primarily legal remedies."). This is an action for monetary damages,[2] and, as a

result, GEOMC's claims are primarily legal, rather than equitable, and therefore can be repaired

by money damages.

---

[2] The operative Complaint in this matter, which dates to 2016, seeks equitable relief in the form of possession of the Devices, or, in the alternative, damages. *See* Second Am. Compl. at 18–19, ECF No. 137 (June 15, 2016).

The existence of a security interest in the Devices, moreover, also does not establish irreparable harm. Irreparable harm "may", but does not necessarily, exist in situations where a creditor has a security interest in a debtor's assets. *Quantum Corp. Funding, Ltd. v. Assist You Home Health Care Servs. of VA.*, 144 F. Supp. 2d 241, 248 (S.D.N.Y. 2001). Harm is irreparable in such situations where a debtor seeks to "mak[e] a judgment uncollectible", *id.*, as evidenced by, for example, multiple unpaid judgments owed to other corporate entities and the state. *See, e.g.*, *id.* at 245–46, 248. While the Court understands GEOMC's concern, given the evidence presented about Calmare's potential financial difficulties, this evidence is not sufficient to demonstrate that Calmare intends to thwart any future judgment in this matter and thereby permit the Court to order the extraordinary remedy of injunctive relief.

Furthermore, GEOMC has failed to show that it will be unable to recover monetary damages in the future, for example, in bankruptcy or even in this matter, if the case is promptly tried. *Cf. Carter-Wallace*, 443 F.2d at 874 (insolvency exception did not apply where "in a[n] [ongoing] Chapter XI proceeding[,]" "it is not unreasonable to believe that [the alleged debtor] will have sufficient assets to respond to plaintiff's recoverable damages for infringement if . . . the action is promptly tried"). The likelihood of GEOMC recovering damages in a bankruptcy proceeding, should it occur, is evidenced by the Security Agreement itself, which provides remedies to GEOMC in such a proceeding in the event of insolvency. *See* Security Agreement ¶¶ 8–9 (defining remedies available to GEOMC upon the "filing of any petition for relief under the Bankruptcy Code" or similar events). Moreover, GEOMC has not alleged that any other creditors would have priority over its claims, if such a proceeding took place. The Court therefore does not find irreparable harm.

### B. Likelihood of Success on the Merits

Even if GEOMC would suffer irreparable harm, it is not likely to succeed in obtaining

relief, at least on the facts currently before the Court.[3] Even if true, the new allegations that

Calmare breached the Security Agreement by allowing a warehouse lien to be placed against the

Devices, failing to maintain insurance on the Devices, and failing to provide GEOMC notice of

Calmare's recent attempt to remove thirty (30) Devices from the warehouse do not constitute an

"event of default" that would entitle GEOMC to repossess the Devices. *See* Emergency Mot. for

TRO at 9–10; Security Agreement ¶¶ 8–9.

Under the Security Agreement, an "event of default" includes:

> (a) The failure of [Calmare] to pay any of the amounts due
> under the Obligations as and when due and payable[;] (b) The
> determination that any material representation or warranty of
> [Calmare] contained in this Agreement is not true, accurate and
> complete and is materially misleading[;] (c) The filing of any
> petition for relief under the Bankruptcy Code or any similar
> federal or state statute by or against [Calmare] or the principals
> of [Calmare] or the failure by [Calmare] or the principals of
> [Calmare] to generally pay their debts as they become due[;]
> (d) An application for the appointment of a receiver for the
> making of a general assignment for the benefit of creditors by,
> or the insolvency of[] [Calmare] or the principals of
> [Calmare][;] (e) The dissolution, merger, consolidation, or
> reorganization of [Calmare][;] [and] (f) If there is any change
> of control of the Company, whether voluntary or involuntary,
> by sale, merger, consolidation, reorganization or otherwise.

Security Agreement ¶ 8; *see also id.* ¶ 9 (remedies for default). An "event of default" does not

explicitly include, under this provision, a breach of the Security Agreement ¶ 5(b) (requiring

Calmare to "[k]eep the [Devices] free of any lien"), ¶ 5(c) (requiring Calmare to "give written

---

[3] The Court notes that, at the September 2, 2021 hearing, it understood that neither party would be submitting additional memoranda or exhibits after the hearing. On September 9, 2020, however, Plaintiffs filed an additional declaration in support of the TRO, with accompanying exhibits. *See* Decl. of S.B. Oh in Support of GEOMC's Motion for a TRO, ECF No. 394 (Sept. 10, 2021).

notice of each location at which the Collateral is or will be kept"), or ¶ 6 (requiring Calmare to "insure the [Devices]"). Even if the Court accepted as true all of these allegations of breach, and interpreted Security Agreement ¶¶ 5(b), 5(c), and 6 as "warrant[ies]" in the Agreement that have been misrepresented, leading to an "event of default", *see* Security Agreement ¶ 8(b), the harm remains reparable, for the reasons explained above, and injunctive relief therefore is inappropriate.

As to the issue of Calmare's alleged default for non-payment, the Court lacks sufficient information to determine likelihood of success on the merits for the issues remanded by the Second Circuit. *See* Summary Order. Although the Court's understanding from the evidentiary hearing, especially from the testimony of Thomas Richtarich, the Chief Financial Officer ("CFO") of Calmare Therapeutics, Inc., is that Calmare has sold approximately 100 Devices since December of 2011, the Court lacks clarification as to how many Devices were sold as opposed to merely delivered, and further lacks sufficient information to determine by what amount, if any, the total owed by Calmare under the Security Agreement should be offset by sales under the Korea Agreement.[4] Even if the Court accepts the argument by Plaintiff, moreover, that it is owed a substantial sum, regardless of any offset that may apply from the Korea Agreement, Plaintiff's request that the Court engage in this calculation on the merits underscores the monetary and reparable nature of the alleged harm.

Accordingly, the motion for a preliminary injunction will be denied.

---

[4] The Court notes that the additional evidence submitted by Plaintiff on September 10, 2021 provides clarification as to whether GEOMC sold any Devices other than those identified in the relevant spreadsheet, *see* Ex. 2 to Decl. of S.B. Oh in Support of GEOMC's Motion for a TRO, ECF No. 394 (Sept. 10, 2021), as well as to its relationship with DIS&L, *see* Decl. of S.B. Oh ¶¶ 7–10. But this evidence, although supportive of the likelihood of GEOMC's success at trial, does not establish irreparable harm.

### III.    Motion for Temporary Restraining Order

In the Second Circuit, "[t]he same standards used to review a request for a preliminary injunction govern consideration of an application for a temporary restraining order." *Stagliano v. Herkimer Cent. Sch. Dist.*, 151 F. Supp. 3d 264 (N.D.N.Y. 2015); *Local 1814 Int'l Longshoreman's Ass'n v. New York Shipping Assoc., Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992) (standard for TRO is the same as preliminary injunction standard). Irreparable harm is the "most significant condition which must be present to support the granting of a temporary injunction." *Capital City Gas Co. v. Phillips Petroleum Co.*, 373 F.2d 128, 131 (2d Cir. 1967) (citation omitted). As with a request for preliminary injunctive relief, irreparable harm must be shown by the moving party to be "not remote or speculative but actual and imminent." *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979) (internal citations omitted). For the same reasons that the Court finds a lack of irreparable harm in the motion for a preliminary injunction, the motion for a temporary restraining order also will be denied.

### IV.    Outstanding Discovery

Given the need for additional information to resolve the merits of this case, and the request by GEOMC for additional discovery, *see* Reply at 7–9, the Court issues the following order as to the parties' outstanding discovery issues.

- GEOMC shall produce to Calmare, **by October 28, 2021**, all sales contracts, invoices, purchase orders, lease agreements, and receipts relating to the Devices GEOMC sold and leased in Korea under the parties' Korea Agreement from January 1, 2013 to the present, with identifying customer information redacted, including customer's names, phone numbers, and addresses. Serial numbers and prices paid for the Devices shall not be redacted. GEOMC shall supplement such responses for any sales or leases under the Korea Agreement from the date the documents are provided until the trial-ready date.
- Calmare shall produce to GEOMC, **by October 28, 2021**, all sales contracts, invoices, purchase orders, lease agreements, and receipts relating to Devices Calmare sold and leased since January 1, 2017, with identifying customer information redacted, including customer's names, phone numbers, and addresses, and insurance

policies Calmare maintained covering Devices in Calmare's possession, custody, or
control or stored in warehouses at Calmare's discretion since January 1, 2017. Serial
numbers and prices paid for the Devices shall not be redacted. Calmare shall
supplement such responses for any sales or leases from the date the documents are
provided until the trial-ready date.

- Both parties shall submit, **by October 28, 2021**, interrogatory responses to one
another as to whether all documents have been provided in response to the above
orders, and, to the extent that a party lacks documents about a sale or lease, or the
produced document(s) lack serial numbers and/or sale/lease prices, the parties shall
describe all other evidence of the sale or lease, including but not limited to the serial
number and sale price of each sold or leased Device.

The Court has already granted the motion to amend the June 13, 2021 scheduling order,

*see* Order Granting Mot. for Extension of Time, ECF No. 385 (Aug. 24, 2021), and therefore

Plaintiff's request to modify the scheduling order, *see* Reply at 3, 6–9, will be denied as moot.

The Court's most recent scheduling order, which sets an end date for discovery of **October 28,**

**2021**, remains in effect. *Id.*

The Court notes that it is not inclined to grant any further extensions of the discovery

deadline in this case, given the age of the case, the alleged failure to comply with discovery by

both parties, and the ample time provided for discovery to date. *See Dietz v. Bouldin*, 136 S. Ct.

1885, 1892 (2016) (noting "a district court's inherent power to . . . manage its docket and

courtroom with a view toward the efficient and expedient resolution of cases" (internal citations

omitted)). Of course, if GEOMC or Calmare wishes to shorten the current discovery deadline to

expedite the resolution of this case, given the age of this case, the Court would be amenable to do

so.

## V.   CONCLUSION

For the foregoing reasons, the Court **DENIES** the motion for a TRO and preliminary

injunction. The Court further **DENIES as moot** the motion to amend the scheduling order, and

**GRANTS in part** and **DENIES in part** the motion to compel discovery and obtain additional

discovery.

        **SO ORDERED** at Bridgeport, Connecticut, this 13th day of September, 2021.

   /s/ Victor A. Bolden       

Victor A. Bolden
United States District Judge
